Filed 3/3/14  P. v. Cappiello CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY JOSEPH CAPPIELLO,<br><br>    Defendant and Appellant. | B246214<br><br>(Los Angeles County<br>Super. Ct. No. MA056199) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carol S. Koppel, Judge.  (Retired Judge of the San Bernardino Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Anthony Joseph Cappiello, in pro. per.; and Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

## SUMMARY

An Information charged appellant Anthony Cappiello with possession of a controlled substance (methamphetamine), in violation of Health and Safety Code section 11377, subdivision (a). The Information also alleged that Cappiello had previously suffered a strike, pursuant to Penal Code sections 667, subdivisions (b)–(i), and 1170.12, subdivisions (a)–(d),[1] for a 2005 felony robbery conviction (§ 211), and that he had previously served three prison terms (§ 667.5, subd. (b)).

Cappiello filed a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, seeking personnel records for the arresting deputies. The trial court found good cause for in camera inspection for materials concerning "fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, false arrest, perjury and dishonesty" and, after an in camera inspection, determined there were discoverable materials.

A jury trial was held. Cappiello waived jury and court trial for the priors, after being advised of his constitutional rights.

## FACTUAL BACKGROUND

*Prosecution case*

On May 12, 2012 at about 2:45 a.m., uniformed Los Angeles Sheriff Department (LASD) Deputies Jason Goedecke and Russell DeLoof responded to a call about a fight in Lancaster. The officers drove their patrol car toward Cappiello and Julie Davis, who were walking on a sidewalk in a parking lot of an apartment complex in the vicinity of the alleged fight to ask if they were aware of a fight in the area, and parked near them.

When the patrol car was about 30 feet from Cappiello, Deputy Goedecke called out to him as he got out of the passenger side, and asked Cappiello if he had seen a fight. Cappiello quickly moved behind Davis facing her back, and put his hands in his pockets. Deputy Goedecke ordered Cappiello to take his hands from his pockets two or three times.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

When Cappiello finally did, he "flicked his wrist, opened his hand, and a clear plastic baggie fell to the ground."

Deputy DeLoof picked the baggie up from the sidewalk or adjacent grass area, as Deputy Goedecke handcuffed Cappiello. Deputy DeLoof had not seen Cappiello drop anything. He saw only that the baggie was about a foot away from Cappiello, on his right hand side. No drug paraphernalia was found on Cappiello, he was not under the influence of any drug, and his fingerprints were not on the baggie. When asked, Cappiello did not admit that the baggie was his. Deputy DeLoof put the baggie in his shirt pocket to transport to the sheriff station where it was later booked into evidence.

Deputy DeLoof testified that Davis spoke with him after Cappiello was in the patrol car and asked if she could "put it on her and say that it was her narcotics and not" Cappiello's.[2]

In May 2012, Deputies Goedecke and DeLoof had each been deputies for about six years. Each testified that, in his training and experience, a useable amount of methamphetamine is .02 grams. A senior LASD criminologist testified the baggie contained .08 grams of methamphetamine.

*Defense Case*

Cappiello did not testify.

Davis testified she and Cappiello were in the carport area of her previous residence when they were stopped on May 12, 2012. They were on the way to the store to get some coffee when they were stopped. Davis had the baggie of methamphetamine in her left front pocket and planned to put some of it in her coffee. Davis got the drug from a neighbor. Cappiello did not know she had it. Davis used methamphetamine occasionally, but not with him. She and Cappiello had been dating about three and a half months when he was arrested. They were no longer dating.

---

[2] This information was not in Deputy Goedecke's incident report, which Deputy DeLoof affirmed.

Davis had not heard any cars pull up, but she saw Deputies Goedecke and DeLoof, and heard yelling and screaming as she turned around and saw three or four patrol cars and guns pointing at her. At the same time, Cappiello pulled her back protectively. Davis was not sure whether the deputies had told her to put her hands inside or outside her pockets, so she kept putting her hands in and out of her shorts. That is when she thinks the baggie fell out of her pocket. Davis also had other drugs in her possession at the time, but was not searched. At first, the deputies had not really paid attention to her. They went toward Cappiello, and Davis was able to kick the baggie from the sidewalk to the curb. The deputies picked up the baggie after they handcuffed her and put her in the patrol car.

Initially, Davis had not confessed that the methamphetamine was hers because, as a "professional person" she had "a lot to lose." But, when the deputies asked if the baggie belonged to her, she told them "it was not ours" but "if you need to charge someone, charge me." Davis told the deputies the methamphetamine belonged to her after she learned they were charging Cappiello. On cross-examination, Davis admitted she had not told the defense investigator that the methamphetamine had been hers because she did not want to incriminate herself. In an addendum to her witness statement Davis admitted later telling the investigator the drugs were hers. Davis claimed to have told the two deputies, three or four public defenders, and two private attorneys that the drugs were hers. She also contacted Cappiello's attorney and admitted the drugs were hers.

Davis had spoken with Cappiello since his arrest. She cared about him, and did not "want to see him get into trouble for something he didn't do." Davis said she testified that the drugs were hers because she had tried to kill herself over this, and needed to ease her conscience.

The court instructed the jury regarding the elements of a possession of a controlled substance, in violation of Health and Safety Code section 11377, subdivision (a), as follows: "*The* usable amount is a quantity that is enough to be used by someone as a controlled substance." (Italics added.) The standard jury instruction reads: "*A useable amount* is a quantity that is enough to be used by someone as a controlled substance." (CALCRIM No. 23041 (2013 ed.), first italics added.)

During deliberations, the jury requested read back of these portions of Deputy Goedecke's testimony: "when approaching suspects," "regarding discussing the case with DeLoof," and "of approach to suspects on foot to through flicking of item from suspect[']s pocket."

After the jury returned a guilty verdict, Cappiello waived court trial for the priors. Cappiello was advised of his rights to confront and cross-examine witnesses, to present evidence for his defense and against self-incrimination, before and after he admitted the prior strike and prior prison terms.

Cappiello admitted an April 2005 conviction for robbery, pursuant to sections 1170.12, subdivisions (a)–(d) and 667, subdivisions (b)–(i). He also admitted two prior prison terms, from 2005 and 2008, respectively, pursuant to section 667.5, subdivision (b).

Cappiello's motion for a new trial was denied, as were his motions to strike the strike and the prison priors pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and his motion to reduce the conviction to a misdemeanor. The prosecutor conceded that only two prison priors could be alleged, pursuant to section 667.5, subdivision (g). Cappiello was sentenced to eight years in state prison: three years for count 1, doubled for the strike (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), plus two years for two prison priors (§ 667.5, subd. (b)). Cappiello was awarded 200 days pre-sentence custody credit, including 100 actual days, and imposed fees and fines.

We appointed counsel to represent Cappiello on appeal. After examination of the record, Cappiello's counsel filed an opening brief raising no issues, and asking this court to independently review the record, including the reporter's transcript of the in camera hearing conducted by the trial court in connection with Cappiello's *Pitchess* motion. On July 5, 2013, we advised Cappiello he had 30 days within which to personally submit any contentions or issues he wished us to consider. Cappiello was granted permission to file a supplemental reply brief by November 7, 2013. Cappiello filed a supplemental brief on November 14, 2013, in which he makes various allegations about judicial and police misconduct, constitutional violations and ineffective assistance of counsel.

Under *People v. Kelly* (2006) 40 Cal.4th 106, we find that Cappiello's supplemental brief does not raise any arguable issues. The contentions in the supplemental brief that the trial court erred by excluding exculpatory evidence from Cappiello's girlfriend that the drugs belonged to her, and made biased or derogatory statements during jury deliberations and sentencing find no support in the record. To the extent Cappiello raises issues with regard to the exclusion of exculpatory evidence that are not apparent from the record, such matters are not cognizable in this appeal. (See *People v. Smith* (2007) 40 Cal.4th 483, 507.)

The supplemental brief cites *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] as to willful suppression of evidence and the obligation to furnish favorable evidence to the defense. The case has no application here.

We also find no arguable claim that trial counsel was ineffective for failing to file a *Romero* motion or for failing to object to "key prosecution witness statements" by the arresting officers. Cappiello's trial counsel filed a *Romero* motion; it was denied. It is unclear what Cappiello means by "key prosecution witness statements." In any event, for an ineffective assistance of counsel claim to be sustained, the defendant must show that counsel's performance fell below an objective level of reasonableness and defendant was prejudiced by counsel's failings. (*People v. Williams* (1997) 16 Cal.4th 153, 214–215.) The defendant must also demonstrate from the record "'the lack of a rational tactical purpose for the challenged act or omission.'" (*Id*. at p. 215.) The jury heard the officers' testimony, and requested read back before reaching its verdict. The duty to determine witness credibility or weigh evidence relevant to such credibility rests solely with the jury. To the extent that Cappiello claims his trial counsel should have conducted some further investigation as to the arresting officers, we cannot ascertain what investigation counsel engaged in. "Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance [of counsel] is more appropriately made in a petition for habeas corpus." (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground by *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

Nothing in the record suggests any failure by Cappiello's counsel contributed to the verdict.

We have completed our independent review of the record, including the reporter's transcript of the in camera hearing conducted by the trial court in connection with the *Pitchess* motion. We are satisfied that Cappiello's counsel fully complied with her responsibilities, and find no arguable issues. (*People v. Kelly*, *supra*, 40 Cal.4th at pp. 109–110; *People v. Wende* (1979) 25 Cal.3d 436, 441.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.